# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-405

DARIUS M. JACK

VERSUS

RALPH A. MCFARLAND, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20140817
HONORABLE MARILYN CARR CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

Kevin Reeve Duck
Duck Law Firm, L.L.C.
5040 Ambassador Caffery Parkway – Suite 200
Lafayette, LA 70508
Telephone: (337) 406-1144
COUNSEL FOR:
    Plaintiff/Appellant - Darius M. Jack

Grady Joseph Abraham
5040 Ambassador Caffery Parkway – Suite 200
Lafayette, LA 70508
Telephone: (337) 234-4523
COUNSEL FOR:
    Plaintiff/Appellant - Darius M. Jack

**Kendrick J. Guidry**
**Plauche, Smith & Nieset**
**P. O. Drawer 1705**
**Lake Charles, LA 70602**
**Telephone:  (337) 436-0522**
**COUNSEL FOR:**
>   **Defendants/Appellees - National General Assurance Company, Ralph A. McFarland, and Angela D. McFarland**

**Kimberly Louper Wood**
**Walsh & Bailey, LLC**
**4214 Bluebonnet Boulevard**
**Baton Rouge, LA 70809**
**Telepohone:  (225) 383-8649**
**COUNSEL FOR:**
>   **Defendant/Appellee - Coco Cola Bottling Company United, Inc.**

**THIBODEAUX, Chief Judge.**

Darius M. Jack, Plaintiff-Appellant, brought suit against Ralph A. McFarland and Coca Cola Bottling Company United, Inc. ("Coca-Cola") seeking damages for injuries he sustained in an automobile accident with McFarland. Jack alleges that Coca-Cola should be held vicariously liable for the tortious act of its employee, McFarland, because McFarland was in the course and scope of employment at the time of the accident. Coca-Cola denies such liability.

Coca-Cola filed a motion for summary judgment on the issue of vicarious liability. It contended that McFarland had finished work for the day, was not performing any services for Coca-Cola, and was in route home after meeting with clients. The trial court granted the motion and dismissed all claims against Coca-Cola. Plaintiff appealed. Based on the following reasons, we affirm the trial court's grant of summary judgment.

I.

## ISSUES

We shall consider whether the trial court erred in granting Defendant, Coca-Cola, summary judgment dismissing all claims against it, after finding that Ralph McFarland was not in the course and scope of employment with Coca-Cola at the time of the accident in question.

II.

## FACTS AND PROCEDURAL HISTORY

Ralph McFarland was traveling home at approximately 4:08 p.m. after leaving a client's workplace. McFarland was traveling north in the left lane when

he allegedly failed to maintain a proper lookout and rear-ended a vehicle operated by Plaintiff, Darius Jack. Jack filed suit for personal injuries against McFarland and Coca-Cola, alleging McFarland was in the course and scope of employment with Coca-Cola at the time.

Jack asserts that at the time of the accident, McFarland was a salesman for Coca-Cola and was in a Coca-Cola polo shirt. He further contends McFarland is a salaried employee of Coca-Cola, was visiting customers on the day of the accident, is compensated for his mileage, and is required to maintain a minimum amount of insurance on his personal vehicle used for work. Jack maintains that McFarland does not have a set work schedule, has a cell phone and laptop paid for by Coca-Cola that he keeps to answer work-related calls and e-mails, and that Coca-Cola contacted McFarland on that cell phone following the accident. He claims that, under the circumstances, Coca-Cola had control over McFarland, thereby implicating the principle of vicarious liability.

In response to plaintiff's suit, Coca-Cola filed a motion for summary judgment on the issue of vicarious liability stating that, although McFarland is a salaried employee and receives compensation for his mileage, McFarland had finished work for the day and was returning home. McFarland did not conduct any business on behalf of Coca-Cola following his last meeting with a client. Furthermore, Coca-Cola asserted that McFarland did not have a set work schedule and typically went home for the day after calling on customers; he was not an on-call employee. In support of their motion, Coca-Cola attached the affidavit of McFarland corroborating their assertions that McFarland owned and maintained his vehicle and insurance as well as the assertion that McFarland was traveling home and was finished exercising any employment duties for Coca-Cola.

After Coca-Cola filed its motion, the trial court concluded there was no genuine issue of material fact as to whether McFarland was in the course and scope of employment and granted summary judgment, dismissing Coca-Cola. On appeal, Jack asserts that genuine issues of material fact do exist, thereby preventing the grant of summary judgment in favor of Coca-Cola.

III.

## STANDARD OF REVIEW

When an appellate court reviews the grant of a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Gray v. Am. Nat. Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Serv. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B)(2).

The burden of proof is on the mover, unless that party would not bear the burden of proof at trial. La.Code Civ.P. art. 966(C)(2). The mover need only show "an absence of factual support for one or more elements essential to the adverse party's claim." *Id.* The burden then shifts to the adverse party who must demonstrate that he will in fact meet his evidentiary burden at trial. *Id.*

3

IV.

## LAW AND DISCUSSION

Jack asserts that reasonable factual inferences create a genuine issue of material fact as to whether McFarland was within the course and scope of his employment with Coca-Cola at the time of the accident, thereby preventing summary judgment. Whether an employer is liable for the actions of an employee is governed by La.Civ.Code art. 2320, which states such liability exists for an employee's tortious conduct when the employee is "in the exercise of the functions in which they are employed." Though McFarland was clearly an employee of Coca-Cola who was paid a salary and made sales trips to customers as his job required, the critical question is whether McFarland's activity at the time of the accident was within the course and scope of his employment with Coca-Cola.

The supreme court has continuously stressed using the following factors in determining whether an employee's conduct was employment-rooted: (1) payment of wages by the employer; (2) employer's power of control over the employee; (3) employee's duty to perform the particular act; (4) time, place, and purpose of the act in relation to service of the employer; (5) relationship between the employee's act and the employer's business; (6) benefits received by the employer from the act; (7) motivation of the employee for performing the act, and (8) the reasonable expectation of the employer that the employee would perform the act. *Orgeron on Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224; *Reed v. House of Décor, Inc.*, 468 So.2d 1159 (La.1985). Factors three through eight consider some form of relationship between the tortious act committed by the employee and the employer's business. These factors can be disposed of together.

4

The relationship between the tortious act that produced the collision and Coca-Cola's business is stretched. Courts state that the specific inquiry should be whether the act "was so closely connected [in] time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974). Coca-Cola employs McFarland as a salesman. He services customers by opening accounts and providing them with fountains. McFarland was leaving a meeting with a customer, made a personal stop, and then continued home from a day's work when the collision occurred, allegedly due to McFarland's failure to maintain a proper lookout. McFarland was not on his way from the office to the customer when this occurred, and thereby furthering Coca-Cola's business. Instead, McFarland was returning home from work and not motivated by his employment to Coca-Cola, not conducting business that would benefit Coca-Cola, or acting in a manner that Coca-Cola would reasonably expect at the time of the accident. McFarland had no other scheduled appointments, anticipated no further work, which is implicit in his decision to return home, and attests he did not conduct any further work that day. McFarland's decision to drive home and the manner in which he drove home was simply not related to or motivated by his employment at Coca-Cola. His actions that benefited the company had concluded with his client meeting. The current situation fits under the general rule that commuting to and from work does not place liability on the employer. *Orgeron*, 639 So.2d 224. Generally, an employee in route from home to work, or vice versa, is not within the course and scope of employment. *Id.*

However, when the employee reports to changing work sites, is not required to begin and end a day's work at the employer's premises, or is on-call when the tortious act occurs, the general rule of travel does not apply so nicely. *Id.* Jack asserts that Coca-Cola's payment of wages to McFarland and alleged continuing control over him prevents Coca-Cola from escaping the realm of vicarious liability. In other words, these factors create an exception to the general travel rule. The two will be addressed separately.

**1. Payment of Wages by Coca-Cola:**

This court has determined that factor one, payment of wages, "as contemplated by the supreme court refers to piecemeal or hourly wages rather than salary." *Hargrave v. Delaughter*, 08-1168, p. 7 (La.App. 3 Cir. 3/4/09), 10 So.3d 245, 250. Instead, when looking at wages, the court should focus on whether the employee was being compensated for the task and the time spent engaging in activities on behalf of the employer. *Id.* If not, any salaried employee would be within the course and scope of employment at all times. *Id.* McFarland is a salaried employee and does not receive overtime pay; however, he has no set work hours. On a normal day, McFarland would arrive at the office, do paperwork, and then visit clients if he had appointments. He would generally go home after seeing clients. McFarland admits he would answer service phone calls from clients or e-mails from his employer on his employer-paid cell phone and laptop. However, he stated the office closed at 5:00 p.m. On this particular day, McFarland had finished his work with his last client and was returning home.

McFarland is also paid a percentage per mile for his travel to service customers. On the day of the accident, McFarland states he had visited clients, but

after his last client he was returning home for the evening and did not record that mileage for repayment. Although he did not have to "clock out," McFarland stated he was not conducting an activity on behalf of Coca-Cola for which he was paid, nor was he being compensated a percent of his mileage for his travel between his last client and his home. It is clear from the record that McFarland was not being paid wages by Coca-Cola when the accident occurred and Jack has not presented any information to contradict this fact.

## 2. Coca-Cola's Power of Control:

Jack contends that McFarland was an "on-call" employee who was subject to working when called upon by Coca-Cola even after leaving work. Furthermore, Jack asserts that Coca-Cola had control over McFarland's vehicle by establishing minimum insurance requirements. Jack analogizes the present situation to that in *Watson v. Ben*, 459 So.2d 230 (La.App. 3 Cir. 1984), in which this court affirmed granting summary judgment to the plaintiff on the issue of vicarious liability, finding the defendant in the course and scope of employment. In *Watson*, the defendant, a salaried employee, had clocked out of work and was on his way home from his place of employment. *Id*. However, the defendant remained on call for a six day period, 24 hours each day. *Id*. During that time, the defendant was required to report to the workplace or job site when he got a call for work. *Id*. Furthermore, the defendant's employer furnished him with credit cards for gas for his personal vehicle, oil and filters, required a minimum level of insurance, and required his vehicle undergo routine inspections and maintenance. *Id*. The court found that these circumstances placed the defendant within the course and scope of employment at the time of the accident.

Similarly, in *Soileau v. D & J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979, this court reversed the trial court's grant of summary judgment in which the trial court found the defendant was not acting in the course and scope of employment. The defendant in *Soileau* was at fault in an accident that occurred after he had closed the business and was returning home. *Id*. However, the defendant remained on call even after locking up the store. *Id*. The defendant received calls after work from customers on his beeper and "was subject to being recalled to the store to satisfy a customer's needs . . . until 7:30 p.m. when he would turn [the beeper] off." *Id*. at 820. The defendant's employer expected defendant to use his personal vehicle for employment business, paid half of his truck note, and issued him a gas credit card. *Id*. This court noted that the factual situation was distinguishable from those cases involving traveling to and from work because the defendant was still working after hours until 7:30 p.m. when he turned his beeper off. Specifically, "[a]t the time of the collision, [defendant] was duty bound to keep his beeper on and to be ready to respond to a call for the benefit, and at the expectation, of his employer." *Id*. at 821. Therefore, the court determined the defendant was in the course and scope of employment even though he was on his way home at the time of the accident. *Id*.

Notably, and what distinguishes *Watson* and *Soileau* from the current situation, is the fact that the defendants in both were required to travel back to their respective places of employment if they received a call from the employer or a customer, whereas McFarland did not need to do so. The facts in the case before us are distinguishable and, in fact, are more similar to those in *Hargrave*, 10 So.3d 245.

In *Hargrave*, this court affirmed granting summary judgment to the defendant employer, finding the accident did not occur while the employee, Delaughter, was in the course and scope of employment. *Id.* The plaintiff asserted that Delaughter was a salaried employee, was paid a car allowance, was on-call when the accident occurred, and was in close proximity to the workplace. *Id.* Additionally, the plaintiff asserted Delaughter was in route to a meeting with his supervisor, though Delaughter testified he was on his way home for his lunch break. *Id.* This court distinguished the situation from that in *Watson* and *Soileau* by recognizing that, although Delaughter could receive calls from his employer at all times, he was not required to proceed to the employer's or customer's location as was the situation in *Watson* and *Soileau*. *Hargrave*, 10 So.3d 245. Instead, "[i]t was possible, if not likely, that a call could be handled over the phone." *Id.* at 250. Last, this court noted that the plaintiff did not present any evidence to contradict Delaughter's unequivocal testimony that he was in route home for lunch when the accident occurred. *Id.*

Coca-Cola did not have control over McFarland once he started his journey home as in a situation where an employer has control over a 24-hour on-call employee subject to being recalled to work. McFarland testified in his deposition and affidavit that he had finished meeting with clients for the day and was returning home. He made a personal stop at the gas station, and was continuing home when the accident occurred. Although there was a possibility he could still be contacted regarding work on his cell or e-mail, McFarland testified he was not, and when that does occur, he normally handles matters over the phone. McFarland explained that customers can reach him on his cell if they have account or support questions. He does admit there is the possibility of being called back to

9

the office before it closes at 5:00 p.m. McFarland stated, however, that he could count on one hand the number of times that had occurred in the last five years. Such an occurrence would be so remote that finding Coco-Cola had control over McFarland after he returned home in this instance would be too attenuated. McFarland also explained that he often is done with his work by 3:30 p.m. and only works the evenings when there are pre-planned festivals he must service. McFarland testified that to meet with a customer, one would contact him and arrange to set up accounts or deliver a fountain. On this particular day, however, McFarland was finished with his work and meetings and was traveling home. He conducted no further work once he left his last client.

Last, Coca-Cola did not exert control over McFarland's means of transportation as in *Watson* and *Soileau*. McFarland testified he previously purchased his vehicle from Coca-Cola. Though he uses his personal vehicle for work and Coca-Cola requires a minimum level of insurance coverage on the vehicle, McFarland owns the vehicle, pays for maintenance, pays the insurance premiums on it, purchased the insurance policy himself, and made the decision regarding which insurance company to use. Coca-Cola may compensate McFarland for a percentage of the miles he drives to service clients, but McFarland was not compensated for the miles he drove from his last client to his home on the day of the accident. The present situation is distinct from those in *Watson* and *Soileau* and Coca-Cola did not exert the amount of control over McFarland necessary to implicate vicarious liability.

## V.

## CONCLUSION

For the above discussed reasons, the judgment of the trial court is affirmed. Summary judgment was correctly granted to Coca Cola Bottling Company United, Inc. and all claims against them properly dismissed. Costs of this appeal are assessed to plaintiff-appellant, Darius M. Jack.

**AFFIRMED**.