STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-341

BRIAN MULLEN

VERSUS

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., ET AL

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, 2016-2314
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

SYLVIA R. COOKS
CHIEF JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Van H. Kyzar and J. Larry Vidrine\*, Judges.

**REVERSED AND REMANDED.**

John P. Wolff, II
Collin J. Leblanc
Sydnee D. Menou
Keough, Cox & Wilson, Ltd.
P.O. Box 1151
Baton Rouge, LA  70821
(225) 383-3796
COUNSEL FOR DEFENDANT/APPELLANT:
    Scottsdale Insurance Co.

Maryalyce W. Cox
E. Wade Carpenter
Mehaffy Weber, P.C.
500 Dallas, Suite 2800
Houston, TX 77002
(713) 655-1200
COUNSEL FOR DEFENDANTS/APPELLEES:
    Lanxess Corp. and Arlanxeo USA, LLC

\*Honorable J. Larry Vidrine participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**COOKS, Chief Judge.**

Scottsdale Insurance Company, in its position as the subrogated underinsured/uninsured motorist carrier of Plaintiff, Brian Mullen, appeals the ruling of the trial court that found the negligent driver, Vincent Roco, not in the course and scope of his employment with Lanxess Corporation/Arlanxeo U.S.A., LLC. For the following reasons, we find summary judgment was inappropriate and reverse and remand for trial on the merits.

On January 26, 2016, Brian Mullen was involved in an automobile accident with a vehicle driven by Vincent Roco. Mullen alleged he endured significant injuries as a result of the accident, including a severe brain injury. On June 6, 2016, Mullen filed a Petition for Damages against State Farm Mutual Automobile Insurance Company (the automobile liability insurer of Roco), Starr Indemnity and Liability Company (a UM insurer of Mullen), GEICO Casualty Company (a UM insurer of Mullen) and Roco, alleging damages resulting from the automobile accident. Mullen later added Axis Surplus Insurance Company and Scottsdale Insurance Company as the excess and second-tier excess UM carriers of Mullen in a First Supplemental and Amending Petition for Damages on December 8, 2016.

On May 9, 2019, Mullen also added Lanxess Corporation and Arlanxeo USA, LLC (in their capacity as the employer of Roco) to the lawsuit in a Second Supplemental and Amending Petition. Roco was employed by Lanxess, which later formed a joint venture becoming Arlanxeo USA, LLC. At the time of the accident, Roco was traveling to a mandatory meeting at the Lanxess premises in Orange, Texas.

Pertinent to this appeal, Scottsdale, Axis and State Farm alleged that Roco was commuting to his place of employment in his personal vehicle when the accident occurred; and, thus, was in the course and scope of his employment. Both Lanxess and Arlanxeo filed responsive pleadings, and eventually a Motion for Summary

Judgment asserting that Roco was not in the course and scope of his employment at the time of the accident. Scottsdale, Axis and State Farm filed oppositions, contending, at a minimum, there were numerous genuine issues of material fact as to the course and scope inquiry which should preclude summary dismissal. Lanxess/Arlanxeo filed a reply memorandum and the hearing on the motion was set for June 18, 2020. That hearing was deferred and Lanxess/Arlanxeo filed an Amended Motion for Summary Judgment, which both Scottsdale and Axis opposed. The hearing was held on August 20, 2020, after which the trial court granted the motion for summary judgment in open court. A Judgment was submitted on October 20, 2020, but Notices of Judgment were transmitted on January 22, 2021.

On November 2, 2020, Mullen entered into a "*Gasquet* Settlement" with Scottsdale. See *Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466 (La.App. 4 Cir. 1980). Accordingly, Mullen assigned its rights to pursue Lanxess/Arlanxeo to Scottsdale. Through this assignment of rights, Scottsdale filed this appeal, and asserts the trial court erred in granting summary judgment as there were genuine issues of material fact that precluded summary judgment under the facts of this case.

## ANALYSIS

### I. *Standing.*

Initially, we will address Lanxess/Arlanxeo's contention that Scottsdale has no standing to bring this appeal. They base this argument on an alleged concession made by Mullen's attorney relating to the issue of course and scope. During arguments on the motion, Mullen's attorney expressed that past jurisprudence from this court made it unlikely that Roco was acting in the course and scope of his employment at the time of the accident. This verbal expression did not constitute a legal waiver of any claims premised on the existence of such action. Clearly, counsel for Scottsdale has a different opinion on this legal question.

We find the *Assignment of Rights* by Mullen to Scottsdale gives it standing to bring this appeal. That agreement provides, in pertinent part:

> As part of the Agreement, plaintiff has assigned and transferred any and all claims, rights, and actions he has against Lanxess Corporation, Arlanxeo USA, LLC and Vincent Roco (to the extent he was in the course and scope of his employment at the time of the accident), such assignment and transfer includes the right to recover the first dollars against such persons or entities to the fullest extent as authorized by law.

Accordingly, we find no merit to Lanxess/Arlanxeo's contention that Scottsdale has no standing to bring this appeal.

## II.     Summary Judgment.

Under Louisiana law, an employer is answerable for the damage occasioned by its servants in the exercise of the functions in which the servant is employed. La.Civ.Code art. 2320. "Liability is imposed upon the employer without regard to [its] own negligence or fault; it is a consequence of the employment relationship." *Sampay v. Morton Salt Co.*, 395 So.2d 326, 328 (La.1981). As a result, an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment. *Baumeister v. Plunkett*, 95-2270 (La. 5/21/96), 673 So.2d 994. An employee is acting within the course and scope of his employment when the employee's action is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224, 226-27.

The Louisiana Supreme Court in *Reed v. House of Decor*, 468 So.2d 1159 (La.1985), discussed the main principles governing master-servant liability:

> Determination of the course and scope of employment is largely based on policy. The risks which are generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, when the party (the alleged employer) upon whom vicarious liability is sought to be imposed had only a marginal relationship with the act which generated the risk and did not benefit by it, the purpose of the policy

4

falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act.

*Id.* at 1162. "Each case, then, requires a factual analysis individual in nature, and prior cases serve merely as illustrations of analogous situations and not as hard-and-fast rules." *Hargrave v. Delaughter*, 08-1168, p. 5 (La.App. 3 Cir. 3/4/09), 10 So.3d 245, 250.

Judgments granting or denying a motion for summary judgment are reviewed de novo. *C & C Energy, L.L.C. v. Cody Invs., L.L.C.*, 09-2160 (La. 7/6/10), 41 So.3d 1134. Thus, the appellate court must use the same criteria as the trial court in determining whether summary judgment is appropriate; "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* at 1137. Similarly, the judge's role in ruling on a motion for summary judgment is not to weigh evidence or determine the truth of the matter, but to determine whether there is a genuine issue of material fact. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. "All doubts should be resolved in the non-moving party's favor." *Id.* at 765. Genuine issues are those as to which reasonable persons could disagree. *Id.* Further, facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. *Id.*

A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). The initial burden of proof is with the mover to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim,

action, or defense. *Id.* The non-moving party must then produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. *Id.* If the non-moving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. *Id.* Whether a particular fact is material can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So.3d 876, *cert. denied*, 574 U.S. 869, 135 S.Ct. 197 (2014).

Despite the legislative mandate that summary judgment procedure is now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Willis v. Medders*, 00-2507 (La. 12/8/00), 775 So.2d 1049; *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La. 2/29/00), 755 So.2d 226.

Louisiana jurisprudence has noted that the determination of whether an employee's acts fall within the course and scope of his employment is normally fact intensive and not suitable for summary judgment. *Orgeron, on Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224; *Soileau v. D & J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979; *Ligeikis v. State Farm Fire and Casualty Company*, 31,954 (La.App. 2 Cir. 10/27/99), 745 So.2d 806.

The record established Roco lived in Lake Charles, Louisiana. He was employed by Lanxess/Arlanxeo as a project engineer, with his fixed place of employment in Orange, Texas. Roco's workplace unit was tasked with the manufacture of the Therban product.[1] Roco was the only process engineer in his unit. The manufacturing of the Therban product is done twenty-four hours a day, seven days a week. A specific "recipe" must be followed in the manufacturing

---

[1] Therban is a partially or completely hydrogenated nitrile butadiene rubber, which exhibits specific characteristics such as strength, heat resistance and oil resistance even in the most extreme environments.

6

process, as any slight deviation can render the product useless for its intended purpose. Scottsdale contended that to ensure product integrity, Roco was required to be available at all times to receive calls and address any issues that might arise. Roco testified that "when there is process trouble, I have to – they'll call me, and I have to help them solve the issues, so I may have to log in to my laptop to assist with the situation." Roco is able to interface and manipulate through his company laptop the "recipe" used to manufacture the Therber product.

Scottsdale maintained that as part of his work duties, Roco was required to be available and respond to issues within his workplace unit twenty-four hours a day, seven days a week. He was required to carry his company issued cell phone at all times and was required to take his company issued laptop to and from work in the event issues arose.

Scottsdale also notes that, at the time of the accident, Roco was en route to a mandatory work meeting. Roco also acknowledged in his testimony that, when the accident occurred, his cell phone was next to him "in case [he] needed to check a call."

It was also testified that, although Roco is a salaried employee, his compensation and bonuses are evaluated, at least in part, on his availability off premises and off hours.

Lanxess/Arlanxeo argued that Roco was traveling from his home in Lake Charles to his fixed place of employment in Orange, Texas when the accident occurred. Lanxess/Arlanxeo noted it did not provide his means of transport (he was driving his mother's vehicle at the time) or pay any expenses or wages for his travel to work. It also maintained Roco's operation of the vehicle was not incidental to, or the actual performance of his job duties, as he was simply driving to work. Lanxess/Arlanxeo contended simply traveling from one's home to a fixed place of employment under these circumstances does not equate to being in the course and

scope of employment under the jurisprudence. They cite the Louisiana Supreme Court's discussion of the "coming and going rule" in *Orgeron*, 639 So.2d 224, as controlling in this case. In *Orgeron*, the court stated:

> The present case involves the application of the principle that an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
>
> The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment.

*Id*. at 227.

The *Orgeron* court did specifically note there can be "'shades of gray' in the otherwise 'black and white' application of the going and coming rule." *Id.* at 227. The court in *Orgeron* eventually concluded "the high degree of employer control and employer benefit in the specially ordered trip" brought the trip within the course and scope of employment under the particular circumstances of that case. *Id.* at 228.

Lanxess/Arlanxeo also maintain this court's opinion in *Jack v. McFarland*, 15-405 (La.App. 3 Cir. 10/7/15), 175 So.3d 1169, supports a finding that summary judgment was appropriately granted in this case. In that case, McFarland (the employee) was traveling home after leaving a client's workplace when he rear-ended a vehicle operated by Jack. Thereafter, Jack filed a personal injury suit against McFarland and his employer (Coca-Cola), alleging at the time of the accident McFarland was in the course and scope of his employment with Coca-Cola.

Jack asserted that at the time of the accident, McFarland was a salaried employee for Coca-Cola and was visiting customers that day of the accident. Jack

noted that McFarland did not have a set work schedule, and was issued a cell phone and laptop by Coca-Cola that he kept to answer work-related calls and e-mails. He also noted Coca-Cola contacted McFarland on that cell phone following the accident. He claimed that, under the circumstances, Coca-Cola had control over McFarland, and therefore he was in the course and scope of his employment when the accident occurred.

In response to plaintiff's suit, Coca-Cola filed a motion for summary judgment on the issue of vicarious liability, countering that, although McFarland was a salaried employee and received compensation for his mileage, McFarland had completed his work for the day and was simply returning home. McFarland did not and was not planning to conduct any business on behalf of Coca-Cola following his last meeting that day. Furthermore, Coca-Cola maintained that McFarland typically went home for the day after calling on customers; and he was not an on-call employee.

In affirming the trial court's grant of summary judgment that McFarland was not in the course and scope of his employment at the time of his accident, this court concluded "Coca-Cola did not have control over McFarland once he started his journey home as in a situation where an employer has control over a 24-hour on-call employee subject to being recalled to work. . . On this particular day, however, McFarland was finished with his work and meetings and was traveling home. He conducted no further work once he left his last client." *Id.* at 1175.

As Scottsdale noted, the facts in *Jack* are distinguishable in certain circumstances. Of particular relevance is the fact that Roco was on-call twenty-four hours a day, seven days a week to answer and remedy any problems that arose at work. Further, in *Jack* it was undisputed that the employee was finished for work and was simply heading home for the day, whereas Roco in this case was driving to work for a mandatory meeting. The trial court noted this discrepancy during the hearing on the motion for summary judgment, stating:

9

> THE COURT: You don't see that *Jack* is different though because in that case I guess McFarland was going home, and in this case Roco was going to work?
>
> . . .
>
> THE COURT: So, you don't think that's distinguishable, the fact that he was on his mission to do his preliminary preparation for his safety --

Although noting this discrepancy, the trial court apparently proceeded to resolve this factual discrepancy in Lanxess/Arlanxeo's favor and grant summary judgment. As is well-established, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. *Willis*, 775 So.2d 1049; *Independent Fire Ins. Co.*, 755 So.2d 226. That was not done here.

Moreover, there was a genuine issue of material fact as to whether Roco was on call twenty-four hours a day. The trial court noted this in his oral reasons for judgment, stating:

> A review of [Roco's] deposition shows at times he is on call and available for his employer, but he *seems* to have discretion to make those decisions internally based on his responses. More often than not he does respond to whatever his employer needs any time of day or night. He *appears* to have the option of not being able to do so . . .

The trial court's use of the words "seems" and "appears" clearly indicate the factual uncertainty around this issue, one which the trial court could only resolve by weighing the evidence and making credibility determinations. That, as set forth above, is not appropriate in a summary judgment proceeding. This court's opinion in *Jack*, which the trial court relied upon in reaching the decision to grant summary judgment, specifically found the fact that the employee there was not a in a situation where "an employer has control over a 24-hour on-call employee subject to being recalled to work" as key in its finding that the employee there was not in the course and scope. Therefore, the on-call status of the employee is clearly material, and the trial court inappropriately resolved this disputed issue on summary judgment. This

was improper and requires that we reverse the trial court's grant of summary judgment and remand back to the trial court for a full trial on the issue of course and scope.

## DECREE

Based on the information found in the record, we find there are genuine issues of material fact that warrant trial on the merits, and dismissal of this case at the summary judgment stage was inappropriate. As noted, it is not the trial court's function on a motion for summary judgment to determine or even inquire into the merits of disputed factual issues that require credibility determinations. Therefore, we reverse the grant of summary judgment and remand the case for trial on the merits. All costs of this appeal are assessed to defendants-appellees, Lanxess Corporation and Arlanxeo USA, LLC.

**REVERSED AND REMANDED.**